CARNILL v. LEDERER, Collector of Internal Revenue.

(District Court, E. D. Pennsylvania.　May 16, 1924.)

No. 7396.

1. **Internal revenue ⬤⟿38—Evidence offered in action for excessive income tax paid held irrelevant.**

   In an action to recover alleged excessive income tax, exacted from plaintiff on account of profit realized from the sale in 1916 of the property of a corporation of which he had been a stockholder since prior to March 1, 1913, the question in issue was the value of his stock on that date, and evidence of expenditures made by the corporation on the property between that date and the time of sale in 1916 was irrelevant.

2. **Evidence ⬤⟿354(14)—In action to recover income tax paid balance sheet held admissible as admission against interest.**

   In action to recover alleged excessive income tax, exacted from plaintiff on account of profit realized from the sale in 1916 of the property of a corporation of which he had been a stockholder since prior to March 1, 1913, a balance sheet taken from the books of the corporation as of March 1, 1913, and made up with the knowledge and consent of plaintiff, *held* admissible as in the nature of an admission against interest, there being no evidence to establish a market value of the stock on that date.

3. **Internal revenue ⬤⟿38—Returns held admissible in action to recover income tax paid.**

   In such action the income tax returns of the corporation for the years 1912 and 1913 were admissible to show the estimates of value placed on its property by its officers.

At Law.　Action by William Carnill against Ephraim Lederer, Collector of Internal Revenue.　On motion by plaintiff for new trial. Denied.

Joseph L. McAleer and John M. Patterson, both of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Atty., and Joseph L. Kun, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

Before THOMPSON and McKEEHAN, District Judges.

THOMPSON, District Judge.　Plaintiff brought suit against the defendant, as collector of internal revenue, to recover the sum of $757,761.78, with interest, being the amount of an additional income tax assessed for the year 1916 in excess of the amount admitted in his return to be due, and paid by him under protest.　Carnill on March 1, 1913, was the owner of 101 shares, of the par value of $100 each, of the capital stock of the Hill Oil & Gas Company, incorporated in 1907, with an authorized capital stock of $20,000.　In June, 1914, the authorized capital stock was increased to $80,000, the additional stock being distributed pro rata among the then stockholders, so that Carnill became, without additional outlay, the owner of 404 shares of the stock.　In 1916 the entire capital stock of the company was sold for $12,000,000, and Carnill received for his 404 shares the sum of $6,060,000.　In his income tax return for the year 1916, he placed the value of his shares as of March 1, 1913, at $5,050,000, and stated in his return a profit of $1,010,000 upon the sale.

The Commissioner of Internal Revenue fixed the value of Carnill's stock as of March 1, 1913, at $430,765, and assessed him further

with interest at the rate of 1 per cent. per month from January 2, 1919, to December 27, 1919, amounting to $75,093.51. The plaintiff having duly claimed abatement and refund, which were refused, brought this suit to recover the additional tax paid, with interest. At the trial, the main issue was the value of the stock as of March 1, 1913. Another issue was whether, under the Act of September 8, 1916, and the regulations adopted thereunder, the plaintiff's return was fraudulent, or made in good faith; it being claimed on behalf of the plaintiff that, if the return and claim for abatement were made in good faith, interest could only be assessed at the rate of one-half of 1 per cent. per month.

There being no evidence of sales of stock of the Hill Oil & Gas Company, evidence was introduced on both sides to show the value of the stock, by proving the value of the property of the company as of March 1, 1913. The company's holdings at that date and at the date of the sale consisted principally, if not altogether, of land held in fee or under lease, with improvements and operations thereon, in Oklahoma, in what is known as the Cushing field. It appeared that the company had, up to 1912, holdings in what was known as the Flat Rock region, about 30 miles distant from the Cushing field; that this property was sold by the company in 1912 for $240,000, $180,000 of which was put into development of the Cushing property, and the balance distributed as a dividend among the stockholders. The testimony consisted largely of that of experts in oil land and development and in oil geology. The jury were instructed to return a special verdict in response to two questions. The verdict was as follows:

"Verdict.—Jury answers questions as follows: '

"(1) What was the fair market price or value as of March 1, 1913, of the 50½ per cent. of capital stock of the Hill Oil & Gas Company owned by William Carnill? $430,765.00.

"(2) Was the claim of William Carnill for abatement of the income taxes assessed against him a bona fide claim? Yes."

Although the verdict was returned on May 16, 1922, no motion for a new trial was made within four days; but on June 27, 1922, the plaintiff, through counsel who had not theretofore appeared in the case, obtained a rule to show cause why he should not have leave to file a motion and reasons for a new trial nunc pro tunc. Nothing further was done until February, 1924, when, upon calling up the said rule, the court granted leave to file a motion and reasons, which was done on February 13, 1924.

The first, second, and third reasons require no comment.

The fourth reason is based upon the rejection of testimony of a witness as to oral statements made by a geologist who was employed to make a geological survey. This testimony was purely hearsay, and the objection was, we think, properly sustained.

The fifth reason, based upon the rejection of the same hearsay testimony, is likewise held untenable.

The sixth reason is based on the rejection of testimony as to what dividends were paid on the capital stock at the time the company was operating in the Flat Rock region. As the Flat Rock property was

the only one producing during 1912, and was sold during that year, the amount of dividends paid through production of that property was irrelevant to show the value of the company's property on March 1, 1913.

[1] The seventh reason is based upon the rejection of the plaintiff's offer to prove that large sums of money had been expended by the company in the development of the property between March 1, 1913, and 1916, the date of sale of the capital stock. The insistence upon this reason for a new trial is based upon a misconception of the real issue in the case. While, in the absence of evidence as to sales of stock, it was competent to prove value of the stock by showing the value of the company's property as of March 1, 1913, that evidence would have no relevancy to prove the value of the stock at the time of the sale. That value was fixed by the price at which it was sold, regardless of what had been expended by the corporation meanwhile. If the corporation were the plaintiff, and the fact to be proved was the difference between the value of property sold by it in 1916 and its value as of March 1, 1913, evidence of capital expenditures made upon the property after March 1, 1913, would be relevant, because such expenditures for betterments would enhance the value and the price paid, and would therefore be added to the value on March 1, 1913, thereby reducing the taxable profit or income. When Carnill sold his stock, however, he had no interest in the question of any outlay made by the company in the meantime. He received the price for his stock, and his relations with the company came to an end.

The eighth reason is based upon the rejection of an offer of testimony concerning the price at which the plaintiff offered the property for sale in 1912. The offer was objected to as a self-serving declaration, and we see no error in sustaining the objection.

The ninth reason is based upon the same ruling, but upon the ground that such evidence tended to show the bona fides of the plaintiff in making his claim for abatement, which was an issue of the case. As that issue was decided in the plaintiff's favor, its rejection did him no harm.

The tenth reason is based upon sustaining an objection to the evidence of the witness William S. Mowris. He testified as to offers he had made for the plaintiff's holdings on certain dates, and was asked what was the highest offer he had made. As that question did not fix any date, the objection was properly sustained.

Eleventh reason: The value of the company's property as of March 1, 1913, it was developed by the evidence, depended largely upon whether certain geological formations known as domes were, prior to that date, known to have been within the Hill Oil & Gas Company's holdings in the Cushing territory. The knowledge of the presence of domes as indications of the presence of deposits of oil went to the question of the prospective value of the property. The plaintiff had produced a map, made by a witness named Vandruff in 1915, which showed two domes on the company's property. It was shown that certain pencil sketches had been made by Vandruff prior to 1913, and the plaintiff's object was to show that these sketch-

es showed the identical domes shown by the maps made later. The pencil sketches were not in evidence. The defendant called an expert witness named Shannon, who was director of the Oklahoma Geological Survey, and examined him with a view of showing that the map of 1915 was so similar to the map of the Geological Survey that the jury might find it was a copy; the state map having been made and published after March 1, 1913. In the Vandruff map the elevations were obtained by the use of the aneroid, which indicates elevations by barometrical pressure. The state maps were made by means of plane tables and alidades. The objection was to the testimony of Shannon concerning general methods of making surface surveys; the plaintiff's counsel contending that it should be restricted to surveys in the Cushing field. As the evidence went to the methods of making surveys by these respective means, and the general difference in results, it was clearly relevant to determine the reliance to be placed upon the Vandruff map of 1915 as showing conditions known prior to March 1, 1913.

[2] The twelfth reason is based upon the admission of a trial balance sheet taken from the books of the company as of March 1, 1913. It was made up by Revenue Agent Kelley, a witness, with the approval of the plaintiff's secretary, who was acting at the direction of and under the authority of the plaintiff. As this balance sheet was made with the plaintiff's knowledge and consent, and under his authority, it was in the nature of an admission against interest, and had a bearing upon the plaintiff's knowledge of the value of the oil company's property as shown by its books.

[3] The thirteenth reason is based upon the admission under objection of the oil company's income tax returns for 1912 and 1913. These were clearly evidential, to show the estimates of value placed upon its property by the company's officers.

The fourteenth reason is based upon sustaining an objection to a question put to the plaintiff in rebuttal. The district attorney had offered in evidence and read to the jury the statement of the Hill Oil & Gas Company, dated July 5, 1913, claiming exemptions from payment to the state of corporation license tax upon its capital stock, in which certain statements were made as to the value of its property. This was signed and sworn to by the plaintiff, Carnill, as president of the company. The plaintiff in rebuttal called one P. E. Magee, who was an officer of the company, who testified that the values stated represented the actual cash investment in each of those items, and that the value there entered was the cash cost carried upon the books of the company. He testified that the value of the oil leases, the productive value thereof, was not included in the report. The plaintiff then asked the following question of Mr. Carnill:

"Q. Will you state to the court and jury the circumstances under which that was made, and how it was made, and by whom?"

This being objected to, the objection was sustained. The question was a vague and general one, and was objectionable upon that ground. If, however, the plaintiff, in answer to that question, was entitled to show that the figures there entered were taken from the

books, and represented the cash paid for the property, his testimony would be merely cumulative, as Magee had already testified to that effect. He had already admitted on cross-examination his execution of the paper. If, upon any other ground, he may have been technically entitled to discredit his own statements made under oath, we do not consider the testimony of sufficient importance to have injuriously affected plaintiff's case through its rejection.

An examination of the entire record shows that the evidence against the plaintiff's contentions concerning value was overwhelming, and we do not feel inclined to disturb now a verdict which was accepted at the time without question as an end of the· case, for reasons which we are satisfied are based upon no substantial foundation.

The motion for a new trial is denied.